**HANSON AGGREGATES
PENNSYLVANIA,
INC., Appellant**

v.

**COLLEGE TOWNSHIP COUNCIL.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2006.
Decided Nov. 20, 2006.

Raymond P. Pepe, Harrisburg, for appellant.

Louis T. Glantz, State College, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this land use appeal, Hanson Aggregates Pennsylvania, Inc. (Landowner) contends the College Township Zoning Ordinance (Ordinance) fails to provide for reasonable mineral development as required by the Pennsylvania Municipalities

Planning Code (MPC)[1] and, therefore, is invalid. Discerning no error in the decisions below, we affirm the denial of Landowner's validity challenge.

Landowner owns and operates a limestone quarry (quarry) in College Township (Township), Centre County. The quarry is located in a Rural Residential District, which permits mining activity. The Township is a member of the Regional Growth Boundary, which consists of five neighboring municipalities and attempts to plan the efficient and economical growth of member municipalities. Approximately 43% of the Township's 12,000 acres is located in the Regional Growth Boundary; 1.6% of this land is zoned Rural Residential. Of Township land outside the Regional Growth Boundary, 13% is zoned Rural Residential. The quarry is the only one in the Centre County Planning Region, and is in close proximity to the Regional Growth Boundary borders.

The quarry extracts gray and black limestone. Gray limestone is necessary for the production of asphalt and concrete. Black limestone is used for drainage, slope stability, and filtration. In 2003, Landowner projected the quarry has a 3.8–year supply of gray limestone remaining; black limestone remains abundant. Consequently, Landowner purchased an option to acquire additional land adjacent to the quarry (Tressler Tract). The Tressler Tract, zoned Agricultural, has a 38.4 year supply of gray limestone. The Ordinance does not permit mining in an Agricultural district.

In 2003, Landowner filed a validity challenge with the College Township Council (Council) contending the Ordinance failed to provide for "reasonable development of minerals" as required by Section 603(i) of the MPC, 53 P.S. § 10603(i).[2] *See* Sections 609.1 and 916.1 of the MPC, 53 P.S. §§ 10609.1 and 10916.1.[3] Landowner also submitted a proposed curative amendment. Id. Council held six public hearings on the validity challenge. After the record closed, Council determined the Ordinance provides for reasonable mineral development. Landowner appealed, and the respected Court of Common Pleas of Centre County (trial court) affirmed.

■ On appeal, Landowner presents three issues. First, it maintains Council failed to consider Section 603 of the MPC in its analysis. Second, Landowner argues Council failed to consider the legal and practical restrictions on mining and the actual needs of the community. Third, Landowner claims Council relied on unsupported evidence to deny its curative amendment request.[4]

---

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

2. Landowner first filed an application to rezone the Tressler Tract. To offset the loss of Agricultural District land, Landowner proposed to rezone 62.5 acres of the quarry as an Open Space District. At the same time, Landowner filed a proposed land development plan. The plan included an alternate traffic route to the quarry that would direct traffic away from nearby townships. Council held hearings on the application, but stayed the proceedings until it adopted a conditional use ordinance in November 2002. Hearings on Landowner's application then resumed. However, after a series of delays, Council indefinitely postponed consideration of Landowner's application.

3. The Act of June 1, 1972, P.L. 333, added Section 609.1, which sets forth the procedure for landowner curative amendments. The Act of December 21, 1988, P.L. 1329, added Section 916.1 and generally provides that a landowner who desires to challenge the validity of an ordinance must submit his challenge to the governing body together with a request for a curative amendment.

4. In evaluating a local agency decision, where a complete record is made before the agency, our review is limited to determining whether

## I.

■ Initially, we note a zoning ordinance enjoys a presumption of constitutionality and validity unless the challenging party shows it is unreasonable, arbitrary or not substantially related to the police power interest the ordinance purports to serve. *Appeal of Realen Valley Forge Greenes Assocs.*, 576 Pa. 115, 838 A.2d 718 (2003). Among other reasons, an ordinance will be found unreasonable and not substantially related to the police power purpose if it is unduly restrictive or exclusionary. *C & M Developers, Inc. v. Bedminster Twp. Zoning Hearing Bd.*, 573 Pa. 2, 820 A.2d 143 (2002). To overcome the presumption of constitutionality, the challenger may demonstrate the ordinance totally excludes an otherwise legitimate use. *Macioce v. Zoning Hearing Bd. of Borough of Baldwin*, 850 A.2d 882 (Pa. Cmwlth.), *pet. for allowance of appeal denied*, 581 Pa. 683, 863 A.2d 1150 (2004). A challenger may show the ordinance is exclusionary on its face or by application. *Id.* Once the challenger meets this burden, the municipality must show the ordinance "bears a substantial relationship to the public health, safety, and welfare." *Macioce*, 850 A.2d at 888.

## II.

■ Landowner first maintains Council failed to consider Section 603 of the MPC in the denial of its validity challenge. It provides in relevant part:

the agency committed an error of law and whether the agency's material findings are supported by substantial evidence. *Caln Nether v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484 (Pa.Cmwlth.2002), *pet. for allowance of appeal denied*, 579 Pa. 694, 856 A.2d 835 (2004).

(a) Zoning ordinances should reflect the policy goals of the statement of community development objectives required in section 606 [53 P.S. § 10606] and give consideration to the character of the municipality, the needs of its citizens and the suitabilities and special nature of particular parts of the municipality.

. . . .

(g) (1) Zoning ordinances shall protect prime agricultural land . . . .

(2) Zoning ordinances shall provide for protection of natural and historic features and resources.

(h) Zoning ordinances shall encourage the continuity, development and viability of agricultural operations . . . .

(i) Zoning ordinances shall provide for the reasonable development of minerals in each municipality.

(j) Zoning ordinances adopted by municipalities shall be generally consistent with the municipal or multimunicipal comprehensive plan or, where none exists, with the municipal statement of community development objectives and the county comprehensive plan.

53 P.S. § 10603(a), (g), (h), (i) and (j).[5]

Landowner contends that, although Council reviewed whether the Ordinance excludes reasonable mineral development by application, it failed to weigh and balance the considerations of Section 603 in determining whether the Ordinance is valid. In response, Council argues Landowner improperly attempts to shift the burden of proof from Landowner to the Township.

Here, Ordinance Section 200–18 permits quarrying in a Rural Residential District.

5. Section 603(i) of the MPC, providing for reasonable mineral development, was added by the Act of June 23, 2000, P.L. 495.

Reproduced Record (R.R.) at 128a. Accordingly, the Ordinance is not exclusionary on its face. Moreover, since Landowner currently operates a quarry within the Township, the Ordinance is not exclusionary by application. *See Hersh v. Zoning Hearing Bd. of Marlborough Twp.*, 90 Pa. Cmwlth. 15, 493 A.2d 807 (1985). Consequently, Landowner must show the Ordinance's regulation of mineral mining is unreasonable and bears no rational relationship to any legitimate zoning interest. *Farley v. Zoning Hearing Bd. of Lower Merion Twp.*, 161 Pa.Cmwlth. 229, 636 A.2d 1232 (1994) (an ordinance is valid if reasonable, not arbitrary, and bears a rational relationship to a permissible state objective). This is essentially a substantive due process analysis. *See McGonigle v. Lower Heidelberg Twp. Zoning Hearing Bd.*, 858 A.2d 663 (Pa.Cmwlth.2004).

When a validity challenge is brought, the governing body is to examine whether the ordinance as a whole is reasonable. This point is illustrated by our recent decision in *LaRock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208 (Pa. Cmwlth.2005).

In *LaRock*, applicants filed a petition for a curative amendment alleging the township zoning ordinance excluded or failed to provide a fair share of non-coal surface mining and related activities. The curative amendment sought the creation of a new zoning district that would include applicants' property. At the time applicants filed the curative amendment request, the zoning ordinance permitted mining in its I–1 General Industrial District but did not specifically refer to non-coal excavation. The township amended its ordinance to include non-coal mining after applicants filed their curative amendment.

Testimony before the township's board of supervisors debated whether mining in the I–1 General Industrial District was exhausted. Ultimately, the board determined the ordinance was valid and, therefore, a new zoning district was not needed. The trial court reversed, concluding the ordinance failed to provide reasonable mineral development where credible testimony established less than one percent of township land was available for mineral extraction.

On further appeal, we held the trial court erroneously limited its review to the percentage of land available for mining in assessing whether the ordinance was valid. Speaking through Judge Cohn Jubelirer, we explained Section 603 of the MPC

> taken as a whole, weighs and balances several different interests in requiring zoning ordinances to reflect the policy goals of the community, and subsection (i) sets out the reasonable development of minerals as *one* such interest. However, the statute requires a *balancing of interests* to determine whether the zoning ordinance, which provides for mining ... is *reasonable*.
>
> In determining what is "reasonable," the [b]oard and ... court must consider the various factors delineated in Section 603, including, *but not limited to*, subsection (i). Section 603 acknowledges: the special nature of various sites within the municipality; the special protection and preservation allowed for natural resources and agricultural land; that zoning ordinances may contain provisions to promote agriculture; and, that ordinances adopted shall be consistent with the municipal comprehensive plan.

866 A.2d at 1213 (citations omitted) (emphasis in original). Because the trial court only evaluated the percentage of land available for mining and failed to review other statutory requirements, we vacated its order and remanded for a determination as to whether the ordinance as a whole was reasonable.

Here, Council undertook the appropriate analysis. To start, Ordinance Section 200–3 states its purpose, including the "[promotion, protection and facilitation] of public health, safety ... general welfare, *coordinated and practical community development* ... schools [and] public grounds." R.R. at 43a; 117a (emphasis added). In addition, Section 200–3 provides the Ordinance was adopted in accord with the Township's Comprehensive Plan and that it considered the Township's character, its various parts, and the suitabilities for particular uses and structures. *Id.; see McGonigle*, 858 A.2d at 668–669 ("[a] significant factor in determining the reasonableness of land use restrictions is whether the restrictions are consistent with the stated purposes of the particular zoning district").

Notably, Council's decision emphasized the Township's relationship to the Regional Growth Boundary. It highlighted the Regional Growth Boundary's goal of promoting efficient and dense community development within its borders and how it advances its objective while protecting rural areas. F.F. Nos. 183–191; R.R. 33a–34a. Further, Council focused on the Regional Growth Boundary's goal of protecting farmland and environmentally sensitive areas. F.F. Nos. 197–204; R.R. at 35a–36a. Council concluded environmental concerns were balanced with the current growth patterns within the Regional Growth Boundary. F.F. No. 205; R.R. at 36a.

Similarly, Council addressed the residential nature of the Township, traced its development history and referenced its projected rate of growth and future needs. In doing so, Council identified distances between existing and proposed residential communities and the quarry's pit. F.F. Nos. 133–157; R.R. at 27a–30a. Council further noted the Centre Region Planning Commission expects the region to see 25.6% of its retail growth and 47.7% of its office and industrial growth within the Township. F.F. No. 158; R.R. 30a. Council also examined the proximity of a proposed recreational park to the quarry's pit and the Township's future school needs. F.F. Nos. 165–181; R.R. 31a–33a.

Land development, in addition to mining operations, also impacts road safety issues. Council recognized that even if it approved Landowner's proposed alternate traffic route, industrial traffic would encounter several school buses per day on a narrow road and cross over a one-lane bridge. F.F. No. 209; R.R. 37a. Council concluded the combined traffic from all sources rendered the alternate route unsafe and undesirable. R.R. at 48a.

Additionally, Council discussed aesthetic and quality of life issues presented by the quarry's expansion. Although Landowner is compliant with government regulations, Council nevertheless noted the quarry is close to two historic towns and a number of historic structures. F.F. No. 216; R.R. at 38a. Blasting would pose threats to these structures, and also disrupt the flow of traffic along State Route 322. F.F. Nos. 215–216; R.R. 38a. Finally, Council noted the area's mining history and Landowner's operation of the quarry. F.F. Nos. 67–129; R.R. 18a–26a. Even without a curative amendment, Council observed, Landowner and its predecessors mined the quarry over 156 years and will continue to do so until reserves are exhausted. F.F. Nos. 122–124; R.R. 25a–26a.

Without reference to specific statutory provisions, Council nonetheless reviewed all of the requirements set forth in Section 603 of the MPC. By focusing on the Regional Growth Boundary, residential growth, and road and traffic concerns, Council considered the character of the municipality, the needs of its citizens and

its comprehensive plan (53 P.S. § 10603(a), (j)). Council also considered the Regional Growth Boundary's goal of protecting agricultural land, farmland, and natural and historic features (53 P.S. § 10603(g)). Finally, Council examined the Township's mining activities over the last century in recognition of the requirement the Ordinance provide for reasonable mineral development (53 P.S. § 10603(i)).

Our review of Council's decision reveals it considered Section 603 in its analysis of whether the Ordinance fails to provide for reasonable mineral development. Accordingly, we find no merit in Landowner's position.

### III.

■ Next, Landowner argues Council failed to consider the legal and practical

restrictions on mining and the actual needs of the community. More specifically, Landowner contends the Ordinance does not provide a "fair share" of land available for mineral development.[6]

The underlying basis of Landowner's argument is Council's determination that 7.1% of Township land is zoned for mining. F.F. No. 57; R.R. at 17a. Although it does not dispute 850 acres of Township land is zoned for mining, Landowner computes only 6 acres, located in the quarry, are available for mining. In doing so, Landowner contends Council erroneously considered land that, although properly zoned, is otherwise unavailable for mineral extraction.[7] It also asserts Council erred in finding any type of commercially viable limestone development meets the community's needs.

6. In *Surrick v. Zoning Hearing Board of Township of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977), the Supreme Court held zoning ordinances must provide a variety of housing opportunities so people would not be excluded from living in a community due to race, class or economic hardship. "Fair share" principles are only applicable in cases where the zoning exclusion is partial, *Appeal of Harbucks, Inc.*, 126 Pa.Cmwlth. 591, 560 A.2d 851 (1989), and require a determination of whether the ordinance reflects a balanced and weighted consideration of the many factors bearing upon local and regional needs. *Centre Lime & Stone Co., Inc. v. Spring Twp. Bd. of Supervisors*, 787 A.2d 1105 (Pa. Cmwlth.2001). Under a "fair share" analysis, the percentage of land zoned for the proposed use is relevant and must be considered in relation to the total undeveloped land in the community. *Id.* Where the amount of land zoned for the proposed use is disproportionately small in relation to the total area of undeveloped land, the ordinance will be deemed exclusionary. *Id.*

It is unclear whether fair share principles apply to uses other than residential. Prior to the enactment of the 2000 amendment to Section 603 of the MPC at issue here, this Court discussed the fair share test in rejecting valid-

ity challenges for industrial and commercial uses. *See McGonigle; Macioce; Centre Lime; E. Marlborough Township v. Jensen*, 139 Pa. Cmwlth. 297, 590 A.2d 1321 (1991); *Weiner v. Bd. of Supervisors of Lower Macungie Twp.*, 119 Pa.Cmwlth. 485, 547 A.2d 833 (1988); *BP Oil, Inc. v. Zoning Hearing Bd. of Borough of Brookhaven*, 37 Pa.Cmwlth. 258, 389 A.2d 1220 (1978). We are aware of no successful "fair share" challenges for uses other than residential.

7. Specifically, Landowner maintains Council erred by including land housing SCI–Rockview because any proposed disposition of Commonwealth property must expressly reserve all mineral rights to the state. *See* Section 2405–A of The Administrative Code of 1929, Act of July 1, 1981, P.L. 143, *as amended, added by* Act of July 1, 1981, P.L. 143, 71 P.S. § 651.5. Landowner further claims Council erroneously included the land housing the Centre County Solid Waste Authority because the land reverts to the state if the plant closes. Similarly, Council included an area referred to as Atherton Avenue, where, Landowner claims, mining is neither suitable nor feasible. Landowner also asserts Council improperly included the Centre County Trash Transfer Station because it is dedicated as a public use.

We reject this contention for several reasons. First and foremost, we reject Landowner's method of analysis. We previously explained that the Ordinance here is not exclusionary on its face or by application. To the contrary, the Ordinance expressly provides for mineral extraction, Landowner has been extracting minerals for an extended period, and Landowner expects to continue extracting minerals in the future. Future extraction is impacted by depletion rather than by application of the Ordinance. Because Landowner is actually enjoying the use in question, the utility of an exclusionary or "fair share" analysis is unclear.

The primary focus of the "reasonableness" of the Ordinance is the balancing of interests identified in Section 603 of the MPC. These are the interests identified by statute as among those to be considered. A "fair share" criterion is not specified in the statute. While it may be an interesting detail in some cases involving an existing use, it is not the primary focus in a "reasonableness" analysis under Section 603 of the MPC. This conclusion is entirely consistent with our recent decision in *LaRock*.

Also, we reject the implication of Landowner's "fair share" argument that a zoning ordinance must provide for depletion-proof mineral extraction. Depletion may warrant consideration in a reasonableness analysis, but it must be balanced against other municipal concerns such as growth, safety and agricultural preservation.[8] For all these reasons, we conclude the Landowner's numerous "fair share" arguments

do not overcome Council's determination based on a balancing of interests.

■ Second, Landowner assigns error in the conclusion that extraction limited to black limestone constitutes reasonable mineral extraction and satisfies community needs. Landowner suggests the validity challenge should be upheld because only gray limestone can meet the community's future needs. We disagree.

In *Centre Lime & Stone Co., Inc. v. Spring Township Board of Supervisors*, 787 A.2d 1105 (Pa.Cmwlth.2001), the township ordinance permitted underground mining activity in Forest Districts and surface mining in Industrial (I–1) Districts. Applicant owned land in a Forest District that contained substantial reserves of skid-resistant stone. Applicant filed a curative amendment to create an overlay district that would permit surface mining on its land. The board of supervisors denied applicant's request. On appeal to this Court, applicant argued we should recognize a separate mineral estate, like coal, for skid-resistant stone. In denying the appeal, we emphasized the coal industry's prominence in Pennsylvania and held skid-resistant stone does not enjoy the same status. Thus, a separate mineral estate for skid-resistant stone was unwarranted.

*Centre Lime* illustrates particular minerals generally are not afforded preferential treatment. Pursuant to Section 603(a) of the MPC, a zoning ordinance is to give consideration to the special nature of the particular parts of the municipality. 53 P.S. § 10603(a). To that end, the Ordi-

---

8. Furthermore, we note that "[t]o allow open ground in a township to be used for any purpose whatsoever solely because little or no undeveloped land remains in areas properly zoned for that purpose would be the antithesis of ... sound planning which is the rationale for all zoning." *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d

285, 291 (Pa.Cmwlth.2000); *see also Villa, Inc. v. Zoning Hearing Bd., Old Forge Borough*, 57 Pa.Cmwlth. 221, 426 A.2d 1209, 1212 (1981) ("suitability of a site is not a relevant consideration when determining the constitutional validity of an ordinance on the grounds of being exclusionary").

nance here permits removal of its mineral resources. Depletion of a particular mineral does not negate the presence of other minerals suitable for extraction. Because black limestone remains abundantly available, the Ordinance still reflects the special nature of the particular parts of the municipality and provides for reasonable mineral development. 53 P.S. § 10603(a), (i).

Third, Landowner failed to demonstrate community needs are not being met. Despite Landowner's estimate of gray limestone reserves, Council found the quarry has sufficient reserves for an additional four to eight years at current production levels. F.F. No. 122, R.R. 25a; Landowner Ex. 8, R.R. 643a–47a. Moreover, Council found Landowner may procure gray limestone from other sources or relocate its facility. F.F. No. 95; R.R. 22a. With current reserves and the ability to obtain additional gray limestone, Landowner failed to demonstrate community needs are unfulfilled.[9]

## IV.

Finally, Landowner contends Council relied on unsupported evidence to deny its curative amendment. More specifically, Landowner maintains the record fails to support Council's findings that quarry expansion presents quality of life and aesthetic issues and that the proposed alternate access route is a safety hazard. *See* F.F. Nos. 207–216; R.R. 37a–38a.

In accord with *LaRock,* Council determined provisions for mineral extraction were reasonable in the context of the Ordinance's stated purposes and regional and local planning. Consequently, the Ordinance is valid. A curative amendment was

therefore not warranted. *See generally Adams Outdoor Advertising Ltd. P'ship v. Borough of Mt. Pocono Zoning Hearing Bd.,* 803 A.2d 852 (Pa.Cmwlth.2002) (where zoning ordinance deemed valid, site-specific relief denied). As a result, we need not address Landowner's argument regarding its curative amendment.

Based on the foregoing, we affirm.

### ORDER

AND NOW, this 20th day of November, 2006, the Court of Common Pleas of Centre County is **AFFIRMED.**

---

9. Landowner further contends that in its "fair share" discussion Council erroneously compared the Township area zoned for mining with area in other municipalities where mining is excluded by application. While comparisons may be interesting, they do not resolve whether *this* Ordinance is "reasonable as a whole." *LaRock.* Therefore, we need not separately address Landowner's argument.