Joseph LAROCK, Cinda Larock Danna and Mary Larock Burke

v.

**BOARD OF SUPERVISORS**
of Sugarloaf Township

v.

Karen J. Mistal, Georgia Nause, Gary Marsch, et al.

Appeal of: Board of Supervisors of Sugarloaf Township

Joseph Larock, Cinda Larock Danna and Mary Louise Larock Burke

v.

Board of Supervisors of Sugarloaf Township

v.

Karen J. Mistal, Georgia Nause, Gary Marsch, et al., Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Dec. 5, 2008.

James A. Schneider, Hazleton, for appellant, Board of Supervisors of Sugarloaf Township.

Charles R. Pedri, Hazleton, for appellants, Karen J. Mistal, et al.

Conrad A. Falvello, Sugarloaf, for appellees.

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10603(i). Section 603 of the MPC provides, in pertinent part, as follows:

(a) Zoning ordinances should reflect the policy goals of the statement of community development objectives required in section 606, and give consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality.

(b) Zoning ordinances ... may permit, prohibit, regulate, restrict and determine:

(1) Uses of land, watercourses and other bodies of water.

(2) Size, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures.

(3) Areas and dimensions of land and bodies of water to be occupied by uses and structures, as well as areas, courts, yards, and other open spaces and distances to be left unoccupied by uses and structures.

(4) Density of population and intensity of use.

(5) Protection and preservation of natural and historic resources and prime agricultural land and activities.

(c) Zoning ordinances may contain:

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Board of Supervisors of Sugarloaf Township (Board) and Karen J. Mistal, Georgia Nause, and Gary Marsch, et al. (Taxpayers) appeal an order by the Court of Common Pleas of Luzerne County (trial court) granting a request for a curative amendment to the Sugarloaf Township Zoning Ordinance (Ordinance) filed by Joseph Larock, Cinda Larock Danna, and Mary Louise Larock Burke (collectively, Larocks). At issue in this case is whether the Ordinance, which permits a quarry only in one zoning district where all minerals have been mined that can be economically extracted, is consistent with Section 603(i) of the Pennsylvania Municipalities Planning Code (MPC),[1] which mandates

(1) provisions for special exceptions and variances administered by the zoning hearing board ...;

(2) provisions for conditional uses ...;

....

(5) provisions to encourage innovation and to promote flexibility, economy and ingenuity in development, including subdivisions and land developments as defined in this act;

(6) provisions authorizing increases in the permissible density of population or intensity of a particular use based upon expressed standards and criteria set forth in the zoning ordinance; and

(7) provisions to promote and preserve prime agricultural land, environmentally sensitive areas and areas of historic significance.

(d) Zoning ordinances may include provisions regulating the siting, density and design of residential, commercial, industrial and other developments in order to assure the availability of reliable, safe and adequate water supplies to support the intended land uses within the capacity of available water resources.

....

(f) Zoning ordinances may not unreasonably restrict forestry activities.... [F]orestry

that ordinances provide for "reasonable development of minerals." 53 P.S. § 10603(i). The trial court, on remand from this Court, granted a curative amendment to the Ordinance and Map, which would permit the operation of a quarry in what had been zoned as a Conservation District.

This case was originally brought to this Court in 2001, when the Larocks requested a variance. Senior Judge Mirarchi, writing for this Court, reversed the trial court's order granting the variance and stated that the more appropriate remedy would be for the Larocks to request rezoning or a curative amendment. The Larocks then filed the present suit requesting a curative amendment. In 2005, this Court issued an opinion in *LaRock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208 (Pa.Cmwlth.2005) (*Larock I*), vacating the trial court's first order granting the curative amendment and remanding with directions to the trial court to remand the case to the Board to evaluate all statutory factors for a curative zoning amendment, including reasonable development of minerals pursuant to Section 603(i) of the MPC. After the Board and trial court further evaluated the factors consistent with our remand order, this matter is again before our Court on appeal.

The Larocks "own three tracts of land, consisting of approximately 235 acres in an area" that was zoned A–1 Conservation and is now zoned S–1 Conservation, in Sugarloaf Township (Township). *LaRock I*, 866 A.2d at 1209.

On August 24, 1998, they filed a petition for a curative amendment in which they alleged that [Sugarloaf] Township excluded or, alternatively, did not meet its "fair share" obligation to provide for "non-coal surface mining, concrete batch and manufacturing plants, bituminous asphalt plants; the manufacture of stone related products, the storage, maintenance and repair of quarry vehicles and equipment; the storage of stone and stone products, stone crushing and screening, and attendant and accessory uses for the aforesaid structures, storage equipment, scales and offices related to the operation of the foregoing." The curative amendment sought to create a new zoning classification called a "Mineral Recovery District" on the Larocks' three tracts of land.... As of the date the curative amendment was filed, the [Ordinance] did provide, generally, for mining in the I–1 General Industrial District.... The Sugarloaf Township Planning Commission reviewed the proposed curative amendment and, on December 5, 2001, recommended that the Board not accept

activities, including, but not limited to, timber harvesting, shall be a permitted use by right in all zoning districts in every municipality.

(g) (1) Zoning ordinances shall protect prime agricultural land and may promote the establishment of agricultural security areas.

(2) Zoning ordinances shall provide for protection of natural and historic features and resources.

(h) Zoning ordinances shall encourage the continuity, development and viability of agricultural operations. Zoning ordinances may not restrict agricultural operations or changes to or expansions of agricultural operations in geographic areas where agriculture has traditionally been present unless the agricultural operation will have a direct adverse effect on the public health and safety....

(i) Zoning ordinances shall provide for the reasonable development of minerals in each municipality.

(j) Zoning ordinances adopted by municipalities shall be generally consistent with the municipal or multimunicipal comprehensive plan or, where none exists, with the municipal statement of community development objectives and the county comprehensive plan. 53 P.S. 10603.

it in its current form because it was inconsistent with the amended ordinance. After receiving the recommendation, the Board began hearings on the proposed curative amendment and, at the first hearing on January 29, 2002, the Larocks' expert witness, John Ross, testified. Ross, an engineer [who works for the company that wants to mine the Larock property], testified that 80–85% of the land in the I–1 General Industrial District had been mined out and that what remained available for mining was less than one half of one percent of the total acreage of the Township. He further stated that due to the existence of various factors, such as aquifers, porous rock formations, mine pits, overhead power lines, old spoils from strip mining, resultant instability from previous deep pit mining and underground gas lines, only three distinct areas of the I–1 District potentially remained available for mineral extraction (a 25–33 acre tract, a 24 acre tract, and a 49 acre tract), and that they were so small that, from an engineering and economic standpoint, they could not feasibly be used for that purpose.

*Id.* at 1209–10 (internal citations omitted). Taxpayers were also present at this hearing, as were several other "neighbors, all of whom testified in opposition to the curative amendment due to the aesthetic impact, air pollution and damage to the roads that would follow if this curative amendment were granted." [2] *Id.* at 1210.

[T]he Township's expert, George Fasic ... an urban planner, testified that the Township has a total of 1,380 acres that are developed, leaving approximately 12,620 acres undeveloped, although not all of this undeveloped land is able to be developed due to the presence of highways. Fasic further stated that the I–1 General Industrial District is comprised of a total of 580 acres, [representing] 4.5%–8% of the total unimproved land in the Township, which, in his opinion, is "highly adequate" for mining in a township such as Sugarloaf. Fasic also stated, based on a two year old map and geological reports he had been given to review, that there was sandstone under the entire Township, but he could not state whether it had since been recovered or could reasonably be recovered.

*Id.* (internal citations omitted).

On May 15, 2002, "[t]he Board concluded that the ... [O]rdinance was valid; therefore, it found no need to create a Mineral Recovery District and denied the curative amendment." *Id.* On appeal, the trial court, which did not take additional evidence:

[r]eversed the decision of the Board, finding the Larocks' expert, Ross, credible to the extent that he stated that only .5% of the area currently zoned for mining [5] could actually be mined and that this was not sufficient for mineral extraction. Specifically, the trial court stated that the [Ordinance] is inconsistent with Section 603(i) of the MPC, 53 P.S. § 10603(i),[6] which requires zoning ordinances to provide for the reasonable development of minerals in each municipality and, thus, the [trial] court found the [O]rdinance invalid. [The trial court] opined that the [O]rdinance "does not provide for the reasonable development of minerals in Sugarloaf Township, but merely pays lip service to this requirement by allowing for surface-mining, quarrying, and accessory uses, in a geographically limited area in which development and extraction ... [is] ... unreasonable [and] unfeasible." ... The trial court concluded that the Town-

---

2. Taxpayers intervened in this case by order of the trial court dated August 15, 2002.

ship had zoned the development of minerals out of existence, in contravention of the MPC, by making it impossible to mine or quarry. It then provided site specific relief by granting the curative amendment *in toto*, permitting mining, and cement and asphalt plants in the Conservation District.

---

5. Ross testified that 85% of the I–1 General Industrial District has already been mined out. The remaining land equates to roughly 85 acres. These 85 acres represent about 17% of the I–1 District. Ross testified that these 85 acres represent "about half of one percent" of the total area of the Township that has not been mined out in that District. According to Ross, it is only this percentage (.5%) that is currently available for extraction, if it is feasible.

6. Section 603 of the MPC states in pertinent part: (i) Zoning ordinances shall provide for the reasonable development of minerals in each municipality.

*Id.* at 1210–11 & nn.5–6 (internal citations omitted) (alterations to quotation in original).

On appeal, this Court noted that "although the parties focus[ed] on a 'fair share' analysis, this case involve[d] the statutory construction and application of Section 603 of the MPC" to the Ordinance. *Id.* at 1212. We explained that:

[t]his statute, taken as a whole, weighs and balances several different interests in requiring zoning ordinances to reflect the policy goals of the community, and subsection (i) sets out the reasonable development of minerals as *one* such interest. However, the statute requires a *balancing of interests* to determine whether the zoning ordinance, which provides for mining in the I–1 General Industrial District and not in a Conservation District, is *reasonable*.

*Id.* at 1213 (emphasis in original). We held that the trial court erred by not considering any of the factors or balancing "the interests set out in Section 603." *Id.* Thus, we held that "for purposes of assessing whether the Township has complied with Section 603, the Board and trial court must" not solely focus on "*the bare percentage of land that had not been already mined and was still available for* mining in the Industrial District," but must also "consider whether, *as a whole,* the ordinance is reasonable." *Id.* (first emphasis added). Because this was not done, we remanded the matter for further proceedings.

On February 2, 2005, the trial court remanded the case to the Board pursuant to this Court's Order of January 26, 2005. The Board, again, requested the opinion of the Planning Commission, which it received on March 21, 2005. The Planning Commission, again, recommended that the Board not accept the curative amendment, opining that the Ordinance adequately provides for the recovery of minerals in the Township. (Letter from Attorney Fagan on behalf of the Township Planning Commission, March 21, 2005.)

A hearing was then held before the Board on March 29, 2005, in which the Township called one witness, Stanley J. Gorski, a professional land surveyor, who is also the Township Zoning Officer. (Board Hr'g Tr. at 11–12, March 29, 2005.) Gorski testified that 4% of the Township is located in the I–1 General Industrial District, where mineral recovery and quarries are permitted, and the portion of the land that the Larocks want to have zoned as a Mineral Recovery District is only about 1.5% of the Township area. (Board Hr'g Tr. at 13–14.) The Larocks offered no new testimony, but requested that the record from the previous hearing (i.e., the exhibits and testimony of their witness, Mr. Ross) be admitted into the record of the current hearing. (Board Hr'g Tr. at 20–22.) Taxpayers presented the testimo-

ny of Frank William Fletcher, a geologist, who testified about the type of rock available throughout the Township and the desirability of said rock for mining and quarrying. (Board Hr'g Tr. at 28–30, 32–38.) Taxpayers also presented the testimony of Ellie K. Triegel, a geologist, who testified about the hydrology of the property where the Mineral Recovery District was proposed and how the proposed quarry would impact and interfere with the ground water system to the detriment of existing water sources. (Board Hr'g Tr. at 52–56.) Taxpayers also presented the testimony of George Fasic, who testified at the prior Board hearing. Fasic opined that "the [T]ownship ha[d] done a fairly decent job of balancing the land use activities that are targeted or likely to occur [within the Township]." (Board Hr'g Tr. at 73–74.) Although Fasic did not testify as to the mineral extraction feasibility in the I–1 District, he did opine that it was not good land use planning to put an intensive activity, such as quarrying, at the proposed site because it is on the side of a steep mountain. (Board Hr'g Tr. at 75–76.) Fasic also testified that creating a Mineral Recovery District of 235 acres in a Conservation District of approximately 5,000 acres would be spot zoning, an inconsistent use within the Conservation District and contrary to the Comprehensive Plan. (Board Hr'g Tr. at 79–80.) After all the experts testified, several Township landowners testified about their concerns regarding traffic and health posed by the proposed quarry operation. (Board Hr'g Tr. at 87–131.)

The Board issued its decision dismissing the challenge to the validity of the Ordinance and denied the application and petition for a curative amendment filed by the Larocks. The Larocks then appealed to the trial court. The trial court took additional testimony in October 2006 on the suitability of the site owned by the Larocks for mining, which the Board had not allowed to be presented at the remand hearing.

The evidence submitted during the October 2006 hearing included exhibits and the testimony of Ross and Malcolm MacKay, P.E. Ross used aerial photos to testify that there is no mining being conducted in the I–1 District and that this area is beset with surface and subsurface impediments to the mining process. (Trial Ct. Hr'g Tr. at 32–33, 53–54 October 27, 2006.) By contrast, Ross stated that the Larock site is comprised of only a small portion of the entire surface area of the northwesterly section of the A–1 Conservation District and that this area is undeveloped and not adjacent to any public roadways, residential developments, or water sources. (Trial Ct. Hr'g Tr. at 50–52, 54.) He opined that, with respect to discharge of water from the existing receiving stream and permitting with the Pennsylvania Department of Environmental Protection (DEP), there would not be any concerns with regard to the Larock site. (Trial Ct. Hr'g Tr. at 52.) In addition, Ross testified that the Larock site is in a remote location and that the stone present and available on the site met the criteria for use in Pennsylvania. (Trial Ct. Hr'g Tr. at 41–44.) He went on to state that it is a sparsely populated area and has never been used for farming. (Trial Ct. Hr'g Tr. at 48–49.) He reiterated his prior opinion that the I–1 District is neither suitable for mineral extraction, nor is it feasible to extract minerals therefrom, and the Larock site is suitable. (Trial Ct. Hr'g Tr. at 53–55.) Ross testified on cross-examination that the Larock site is 1,000 feet from the westerly edge of a small housing development and 3,000 feet from the closest residential dwelling with an on-site well. (Trial Ct. Hr'g Tr. at 60.)

The trial court then issued its 33–page decision reversing the Board's decision. In granting the Larocks a curative amend-

ment to the Ordinance, the trial court stated:

> The record is clear and unequivocally unchallenged that there are no minerals to be recovered in the existing mineral recovery district.
>
> On the other hand, Larocks presented evidence that there is a suitable area in the Township with a reasonable development of minerals and, given the record as a whole, such development can take place to comply with the requirements of § 603(i) without violating or even imposing upon the other requirements or guidelines of § 603 or the community development objectives of the Township itself.

(Trial Ct. Op. at 30, January 2, 2008.) This appeal ensued.[3]

There are three issues on appeal. First, the Board and Taxpayers both contend that the trial court abused its discretion in taking additional testimony from the Larocks after a hearing was held before the Board. Second, the Board and Taxpayers both contend that the trial court erred in finding that the Ordinance is exclusionary and unconstitutional in its application relative to the recovery of minerals. Lastly, Taxpayers argue that the trial court created " 'spot' zoning for a 235 acre tract." (Taxpayers' Br. at 7.)

■ We first address whether the trial court abused its discretion in taking additional testimony from the Larocks. The Board and Taxpayers contend that the trial court erred in granting the Larocks' petition to present additional evidence because they were given a full and fair opportunity to present all of the evidence they deemed relevant before the Board.

Taxpayers contend that the testimony presented to the trial court dealt with suitability of the site, which is not relevant when determining the constitutional validity of an ordinance challenged on the grounds of being exclusionary with a specific remand to the Board. *See Villa v. Zoning Hearing Board of Old Forge Borough,* 57 Pa. Cmwlth. 221, 426 A.2d 1209, 1212 (1981); *In re Application of Friday,* 33 Pa. Cmwlth. 256, 381 A.2d 504, 507 (1978) ("Site suitability is an appropriate consideration going to the type of relief, if any, that should be given to a landowner after he has successfully challenged an ordinance.") However, this argument is not persuasive.

■ Section 1005–A of the MPC provides, in pertinent part, that "[i]f, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence." 53 P.S. 11005–A. A trial court "faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because that party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded." *Danwell Corp. v. Zoning Hearing Board of Plymouth Township,* 115 Pa.Cmwlth. 174, 540 A.2d 588, 590 (1988).

We agree with the Larocks that it was within the trial court's discretion to allow additional testimony because the Board incorrectly precluded the Larocks from presenting evidence with regard to the suitability of the proposed site. (*See* Board Hr'g Tr. at 74–75, January 29, 2002.) The

---

**3.** Where the trial court takes additional evidence, "[o]ur review is limited to a determination of whether or not the [trial court] abused its discretion or committed an error of law." *Christ United Methodist Church v. Municipality of Bethel Park,* 58 Pa.Cmwlth. 610, 428 A.2d 745, 746 (1981).

pertinent sections of the MPC dealing with a challenge to the validity of an ordinance and a curative amendment do not specifically bifurcate the issues of validity and suitability. Section 916.1(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(a), provides that:

> A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest **shall submit the challenge** . . .
>
> (2) **to the governing body** under section 909.1(b)(4), **together with a request for a curative amendment under section 609.1.**

53 P.S. § 10916.1(a)(2) (emphasis added). Section 916.1 of the MPC goes on to state that the submissions to the Board challenging the validity of an ordinance "**shall be accompanied by an amendment or amendments to the ordinance** proposed by the landowner to cure the alleged defects therein." 53 P.S. § 10916.1(c)(2) (emphasis added). If the Board should determine that the challenged ordinance or map is defective, the Board "shall proceed as provided in section 609.1."[4] 53 P.S. § 10916.1(c)(5).

▪ It seems clear that the legislative intent behind Section 916.1(a) of the MPC was to require that a landowner's challenge to the validity of an ordinance must also contain the landowner's proposed curative amendment for the Board to evalu-

ate. Here, the Board found that the Ordinance was valid and not exclusionary and, therefore, never reached the issue of site-specific relief to remedy the defect. However, the trial court granted the Larocks the opportunity to present evidence on site suitability because it was necessary for the trial court to consider, especially here, where the trial court disagreed with the Board and found the Ordinance was invalid as exclusionary. Further, we note that, contrary to the Board and Taxpayers' argument, *Villa* does not stand for the proposition that evidence on suitability must be withheld pending a determination of validity. This Court, in *Villa*, never addressed the issue of suitability because it found the ordinance at issue was not exclusionary in effect; thus, there was no need to get to the issue of suitability.

The Larocks were also precluded from cross-examining Taxpayers' expert, Triegel, on existing, permitted uses in the A–1 District, presumably to address the comparative geological impact these uses would have that might be similar to the operation of a quarry. (*See* Board Hr'g Tr. at 57–59, March 29, 2005.) We agree with the Larocks that the exclusion of the above-mentioned evidence prevented the Board from considering both the credibility and suitability issues. Accordingly, under the circumstances of this case, we cannot conclude that the trial court abused its discretion in light of the record below and the remand directive of this Court.

▪ The Board and Taxpayers' second argument is that the trial court erred in

---

4. According to Section 609.1 of the MPC, added by the Act of June 1, 1972, P.L. 333, 53 P.S. § 10609.1, the governing body is required to hold a hearing on the challenge and proposed amendment within 60 days of the request. 53 P.S. § 10609.1(a). The MPC further states:

> If a municipality does not accept a landowner's curative amendment brought in ac-

cordance with this subsection and a court subsequently rules that the challenge has merit, the court's decision shall not result in a declaration of invalidity for the entire zoning ordinance and map, but only for those provisions which specifically relate to the landowner's curative amendment and challenge.

53 P.S. § 10609.1(b).

reversing the Board's decision because the Board fulfilled the mandates set forth in Section 603 of the MPC, as required by this Court on remand in *LaRock I,* and as reinforced by this Court in *Hanson Aggregates Pennsylvania, Inc. v. College Township Council,* 911 A.2d 592 (Pa.Cmwlth. 2006). Thus, the Board and Taxpayers contend that the trial court erred in reversing the Board's decision and granting a curative amendment. In opposition, the Larocks argue that *Hanson* does not apply because, in *Hanson,* the challengers requested the expansion of an existing, operating limestone quarry. In contrast, the Larocks contend that no such quarry or other mining operation exists or has existed in the Township for years. Furthermore, the Larocks contend that the trial court's de novo findings are well founded in the record, and thus, the trial court's order should be affirmed.

 In *Hanson,* this Court was faced with the same issue of whether an ordinance was invalid for failure to provide for "reasonable development of minerals" as required by Section 603(i) of the MPC. *Hanson,* 911 A.2d at 594. In setting out the law, this Court explained that there is a presumption that a zoning ordinance is constitutional and valid unless the party challenging the zoning ordinance shows that "it is unreasonable, arbitrary or not substantially related to the police power interest" which it purports to serve. *Hanson,* 911 A.2d at 595. One of the reasons a court will find an ordinance "unreasonable and not substantially related to the police power [is] if [the ordinance] is unduly restrictive or exclusionary." *Id.* For instance, a "challenger may demonstrate [that an] ordinance totally excludes an otherwise legitimate use" either "on its face

or by application." *Id.* "Once the challenger meets this burden, the municipality must show the ordinance 'bears a substantial relationship to the public health, safety, and welfare.' " *Id.* (quoting *Macioce v. Zoning Hearing Board of Borough of Baldwin,* 850 A.2d 882, 888 (Pa.Cmwlth. 2004)).

 As this Court stated in *LaRock I* and *Hanson,* when a validity challenge is brought, the Board or trial court is required to examine whether the ordinance, as a whole, is "reasonable." *LaRock I,* 866 A.2d at 1213; *Hanson,* 911 A.2d at 596. "In determining what is 'reasonable,' the Board and trial court must consider the various factors delineated in Section 603, including, but *not limited to,* subsection (i)," which states that "[z]oning ordinances shall provide for the reasonable development of minerals in each municipality." 53 P.S. § 10603(i); *LaRock I,* 866 A.2d at 1213. Some of those factors to be considered and interests to be balanced, as set forth in Section 603, include: "the special nature of various sites within the municipality, 53 P.S. § 10603(a); the special protection and preservation allowed for natural resources and agricultural land, 53 P.S. § 10603(b)(5); that zoning ordinances may contain provisions to" preserve agricultural land, environmentally sensitive areas, and areas of historic significance, "53 P.S. § 10603(c)(7); and, that ordinances adopted shall be consistent with the municipal comprehensive plan, 53 P.S. § 10603(j)." *LaRock I,* 866 A.2d at 1213.

In applying the law to the facts in *Hanson,* we held that the challenged ordinance was valid and did permit a reasonable development of minerals because the landowner who challenged the validity of the ordinance operated a quarry [5] and intend-

5. *Hanson* presented this Court with the following factual scenario:

Landowner owns and operates the limestone quarry ... in College Township....

ed to continue operating the quarry in the future. Thus, we concluded that the ordinance did not exclude mining on its face or by application. *Id.* at 595–96. In determining whether the ordinance, as a whole, was reasonable we held that the governing body "reviewed all of the requirements set forth in Section 603 of the MPC" and focused "on the Regional Growth Boundary, residential growth, . . . road and traffic concerns, . . . the character of the municipality, the needs of [the] citizens[, the township's] comprehensive plan[,] . . . [the] goal of protecting agricultural land, farmland, and natural and historic features." *Id.* at 597–98. Furthermore, we disagreed with the landowner's position that the ordinance did not "provide a 'fair share' of land available for mineral development." *Id.* at 598. Of importance to this case, we held that the ordinance was "not exclusionary on its face or by application." *Id.* at 599. We explained that "*[f]uture extraction [was] impacted by depletion*" and not "*by application of the [o]rdinance.*" *Id.* at 599 (emphasis added). This Court went on to note that "[t]he primary focus of the 'reasonableness' of the [o]rdinance is the balancing of interests identified in Section 603 of the MPC" and that "[a] 'fair share' criterion is not specified in the statute."

*Id.* Such a criterion "is not the primary focus in a 'reasonableness' analysis under Section 603 of the MPC. This conclusion is entirely consistent with our recent decision in *LaRock [I]*." *Id.*[6]

The facts in this case are different from *Hanson* because there is no mineral extraction currently being conducted in the I–1 District, (Trial Ct. Hr'g Tr. at 33, October 27, 2006), and mineral extraction has not been conducted in several years because it is no longer profitable to extract minerals in the I–1 District. We nevertheless conclude that *Hanson* is instructive on how to balance the factors in Section 603 of the MPC in determining whether the Ordinance, as a whole, is reasonable and, thus, valid.

■ Taxpayers contend that the *Board* properly followed the recommendation of the Planning Commission and considered several different factors, as required by Section 603 of the MPC, in determining that the Ordinance was constitutional. However, contrary to their argument, it is not the *Board's* findings and conclusions we review on appeal. Because the trial court took additional evidence, the trial court reviewed the challenge and applica-

The quarry is located in a Rural Residential District, which permits mining activity. [College] Township is a member of the Regional Growth Boundary, which consists of five neighboring municipalities and attempts to plan the efficient and economical growth of member municipalities. Approximately 43% of [College] Township's 12,000 acres is located in the Regional Growth Boundary; 1.6% of this land is zoned Rural Residential. Of [College] Township land outside the Regional Growth Boundary, 13% is zoned Rural Residential. The quarry is the only one in the Centre County Planning Region, and is in close proximity to the Regional Growth Boundary borders. *Hanson,* 911 A.2d at 594.

6. Furthermore, the Hanson Court rejected the landowner's contention that only black lime-

stone can be extracted in the permitted district, but that the community's future needs can only be satisfied by the extraction of gray limestone. We stated that "[d]epletion of a particular mineral does not negate the presence of other minerals suitable for extraction. Because black limestone remains abundantly available, the [o]rdinance still reflects the special nature of the particular parts of the municipality and provides for reasonable mineral development." *Hanson,* 911 A.2d at 600. Moreover, we held that because "Landowner may procure gray limestone from other sources or relocate its facility" in order to extract gray limestone, "Landowner failed to demonstrate community needs are unfulfilled." *Id.*

tion for curative amendment de novo. Accordingly, we must review the *trial court's* findings and conclusions to determine whether the trial court committed an error of law or abused its discretion. *Christ United Methodist Church v. Municipality of Bethel Park*, 58 Pa.Cmwlth. 610, 428 A.2d 745, 746 (1981). We now turn to the trial court's decision to determine whether the trial court properly balanced the factors of Section 603 of the MPC as discussed in *Hanson*.

The trial court concluded that the Mineral Recovery District in the remote corner of the Township, located on the Larocks' property, can be established as required by Section 603(i) of the MPC without violating the other requirements or guidelines set forth for ordinances in Section 603. (Trial Ct. Op. at 30–31.) The trial court considered the various factors in Section 603 of the MPC, including the stated purpose of the Ordinance, the community development objectives of the Ordinance, the character of the Township, the needs of the citizens, and the suitabilities and special nature of particular parts of the Township. (*See* Trial Ct. Op., Finding of Fact (FOF) ¶¶ 1–2, 10, 12–15, 17–18, 20, 23–24, 27–31, 39–53, January 2, 2008.) The trial court noted the Township's objective to preserve the quality of existing residential and agricultural areas and to promote the Township's natural amenities, such as streams and stream valleys, which could be disrupted or abolished by a reasonable mineral extraction. (FOF ¶¶ 4, 10, 13–15.) The trial court also took into consideration the Ordinance's provision to permit forestry within the A–1 District and considered any disruption to developed areas or existing agriculturally developed land if the Larock site would house this Mineral Recovery District. (FOF ¶¶ 16–17.) The trial court also emphasized the fact that the

I–1 District, as identified in the Ordinance, is the only district identified for the purpose of mineral extraction, and said extraction "cannot feasibly be used for mining or mineral extraction." (FOF ¶¶ 5–6.) In making this factual finding, the trial court relied on Ross's testimony that, at the time the Ordinance was passed, the existing I–1 District had already been mined out through coal extraction since 1955. (*See* Board Hr'g Tr. at 29–43, January 29, 2002.) Further, Ross testified, and MacKay agreed, that because of impediments in that district, extracting minerals from that location would be cost-prohibitive and unfeasible from an engineering and economic standpoint. (Trial Ct. Hr'g Tr. at 65–66, 108–10, October 27, 2006.)

Although the trial court relies heavily on the fact that there are presently no minerals to be recovered in the I–1 District in determining that the Ordinance was invalid, the trial court failed to look specifically at the underlying reason for it—i.e., that minerals have already been extracted in that district. *Hanson* illustrates that there is a difference between the extraction of minerals impacted by depletion versus the extraction of minerals impacted by the application of an ordinance which is de facto exclusionary. *See Hanson*, 911 A.2d at 599. As *Hanson* suggests, this factor has to be taken into consideration when balancing the factors of Section 603 in determining whether the Ordinance, as a whole, is reasonable. *See id.* Without such consideration, a "creeping quarry" could slowly expand and eventually consume a municipality's undeveloped land. A municipality should not necessarily be required to designate a new area for mineral extraction where an established mineral extraction zone within the township has been depleted. This is consistent with our case law. In *Mont-*

*gomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285 (Pa. Cmwlth.2000), this Court stated:

> if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead. In other words, there is no ongoing obligation on the part of the township to rezone for mobile home parks because the vacant land in the "E" Residential District was developed for apartments.

*Id.* at 290. Analogously, there is no obligation on the part of a municipality to rezone land for mineral extraction because the land already devoted to mineral extraction has been mined out.

On remand, the trial court was not only required to follow our instructions from *LaRock I,* but it was also bound by our decision in *Hanson,* which applied *LaRock I.* The trial court erred as a matter of law when it failed to consider the underlying reason that impeded the extraction of minerals in the I–1 District and when it held that "[i]f all of the other mandates and guidelines set forth in § 603 of the MPC

can be met, the requirement" found in Section 603(i) providing "for the reasonable development of minerals in each municipality is a mandate imposed by the [L]egislature ... and is not discretionary." (Trial Ct. Op., Conclusions of Law (COL) ¶ 14.)

In balancing the interests in Section 603 of the MPC, together with the fact that extraction of minerals in the I–1 District is impeded because of depletion, rather than by application of the Ordinance, we can only conclude that the factors balance in favor of the Ordinance being found reasonable.[7] The Ordinance did, in fact, provide an opportunity for the reasonable development of minerals, an opportunity of which its citizens have taken full advantage. Just because the I–1 District has been mined out does not mean that the Ordinance is exclusionary or unconstitutional. The Ordinance fully complies with the guidelines set forth in Section 603 of the MPC and, thus, is reasonable.

Accordingly, we reverse the order of the trial court.[8]

### ORDER

NOW, December 5, 2008, the order of the Court of Common Pleas of Luzerne

---

7. We note that the Larocks also rely on decisions by this Court in *Christ United Methodist Church v. Municipality of Bethel Park,* 58 Pa. Cmwlth. 610, 428 A.2d 745 (1981) and *Stahl v. Upper Southampton Township Zoning Hearing Board,* 146 Pa.Cmwlth. 659, 606 A.2d 960 (1992), for the proposition that the trial court properly recognized that, if a zoning ordinance makes development of a use permitted by an ordinance economically impossible, the ordinance is unconstitutional as the municipality has essentially precluded legitimate use by indirect means. However, the Larocks' reliance is misplaced because those cases did not deal with the issue of whether an ordinance provided for reasonable development of minerals pursuant to Section 603 of the MPC. Furthermore, in *Stahl,* this Court was presented with a "fair share" challenge, of the type discussed in *Surrick v. Zoning Hear-*

*ing Board of the Township of Upper Providence,* 476 Pa. 182, 189, 382 A.2d 105, 108 (1977). As this Court has previously stated, this case does not center on a fair share analysis but, rather, on whether the Ordinance provides for "reasonable development of minerals" per Section 603 of the MPC. 53 P.S. § 10603(i); *LaRock I,* 866 A.2d at 1212; *see also Hanson,* 911 A.2d at 599 (stating that "[a] 'fair share' criterion ... is not the primary focus in a 'reasonableness' analysis under Section 603 of the MPC").

8. Because of our disposition, we need not reach Taxpayers' argument that the trial court's remedy in "granting [the Larocks'] 235 acre tract to be utilized as a quarry ... [was] 'spot' zoning in the middle of a Conservation District." (Taxpayers' Br. at 20.)

County in the above-captioned matter is hereby reversed.