Joseph LAROCK, Cinda Larock Danna
and Mary Larock Burke

v.

BOARD OF SUPERVISORS OF
SUGARLOAF TOWNSHIP

v.

Karen J. Mistal, Georgia Nause, Gary
Marsch, Foster Doan, Elizabeth L.
Doan, Edward Yelito, Ann Campel-
lone, Tony Campellone, Walter Petro-
vich, Nancy Hausam, Sharon L. Far-
rett, John R. Farrett, Jeanette Levan,
Michael E. Kijanka and Sally J. Ki-
janka.

Appeal of: Karen J. Mistal, Georgia
Nause, Gary Marsch, et al.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2004.

Decided Jan. 26, 2005.

Charles R. Pedri, Hazleton, for appellants.

Conrad A. Falvello, Sugarloaf, for appellees, Joseph Larock, et al.

BEFORE: LEADBETTER, Judge,
COHN JUBELIRER, Judge,
JIULIANTE, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Karen Mistal and the other above-named appellants, residents and taxpayers of Sugarloaf Township (Appellants), appeal an order of the Court of Common Pleas of Luzerne County (trial court) that granted a petition for a curative amendment to Joseph Larock, Cinda Larock Danna and Mary Larock Burke (the Larocks), owners of real property that is zoned as an A–1 Conservation District, permitting them to conduct a quarry-mining operation and other related activities in the Conservation District. In so doing, the trial court reversed the decision of the Board of Supervisors of Sugarloaf Township (Board) to deny the request for a curative amendment.

The trial court held that Sugarloaf Township's (Township) zoning ordinance is inconsistent with Section 603(i) of the Pennsylvania Municipalities Planning Code (MPC),[1] which mandates that zoning ordinances provide for reasonable development of minerals. Appellants assert on appeal that (1) the decision of the Board to deny the curative amendment was supported by substantial evidence; (2) the trial court should have remanded this matter back to the Board; (3) the trial court abused its discretion by retaining jurisdiction over a land development plan that was never applied for; and (4) the trial court's order created a "spot" zone for a 235 acre tract.

The Larocks own three tracts of land, consisting of approximately 235 acres, in an area zoned A–1 Conservation in Sugarloaf Township. On August 24, 1998, they filed a petition for a curative amendment in which they alleged that the Township excluded or, alternatively, did not meet its 'fair share' obligation to provide for "[n]on-coal surface mining, concrete batch and manufacturing plants, bituminous asphalt plants; the manufacture of stone related products, the storage, maintenance and repair of quarry vehicles and equipment; the storage of stone and stone products, stone crushing and screening, and attendant and accessory uses for the aforesaid structures, storage equipment, scales and offices related to the operation of the foregoing." (Pet. For Curative Amendment at 1.) The curative amendment sought to create a new zoning classification called a "Mineral Recovery District" on the Larocks' three tracts of land, and would allow for all the above-described uses. (Pet. For Curative Amendment at 3.) As of the date the curative amendment was filed, the Township's ordinance did provide, generally, for mining in the I–1 General Industrial District, but did not refer specifically to non-coal mining or quarrying. The Township amended the zoning ordinance *after* the curative amendment was filed;[2] there was no pending ordinance at the time the request was made.

The Sugarloaf Township Planning Commission reviewed the proposed curative

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10603(i).

2. The amended ordinance provides for the Larocks' requested uses by special exception in the I–1 General Industrial District, added a definition for quarry and surface mining, and added additional uses permitted by right in an A–1 Conservation District, which include, "[w]oodland and game preserve, fish hatchery, game propagation farm and wildlife sanctuary." (Ordinance No. 4 of 2001.)

amendment, and, on December 5, 2001, recommended that the Board not accept it in its current form because it was inconsistent with the amended ordinance. After receiving the recommendation, the Board began hearings on the proposed curative amendment and, at the first hearing on January 29, 2002, the Larocks' expert witness, John Ross, testified. Ross, an engineer, testified that 80–85% of the land in the I–1 General Industrial District had been mined out and that what remained available for mining was less than one half of one percent of the total acreage of the Township. (Board Finding of Fact (FOF) ¶ 18;[3] Jan. 29, 2002 Hearing, N.T. at 71.) He further stated that due to the existence of various factors, such as aquifers, porous rock formations, mine pits, overhead power lines, old spoils from strip mining, resultant instability from previous deep pit mining and underground gas lines, only three distinct areas of the I–1 District potentially remained available for mineral extraction (a 25–33 acre tract, a 24 acre tract, and a 49 acre tract), and that they were so small that, from an engineering and economic standpoint, they could not feasibly be used for that purpose. (Id. at 69–72.) Also present at this hearing were several neighbors, all of whom testified in opposition to the curative amendment due to the aesthetic impact, air pollution and damage to the roads that would follow if this curative amendment were granted.

The hearing was continued until February 19, 2002 when the Township's expert, George Fasic, testified. Fasic, an urban planner, testified that the Township has a total of 1,380 acres that are developed, leaving approximately 12,620 acres undeveloped, although not all of this undeveloped land is able to be developed due to the presence of highways. (Feb. 19, 2002 Hearing, N.T. 65–67.) Fasic further stated that the I–1 General Industrial District is comprised of a total of 580 acres, which is 4.5%–8% of the total unimproved land in the Township, which, in his opinion, is "highly adequate" for mining in a township such as Sugarloaf. (Id. at 37–38.) Fasic also stated, based on a two year old map and geological reports he had been given to review, that there was sandstone under the entire Township, but he could not state whether it had since been recovered or could reasonably be recovered.

■ The Board concluded that the Township's ordinance was valid; therefore, it found no need to create a Mineral Recovery District and denied the curative amendment. Specifically, the Board found that the ordinance permits surface mining and quarrying in the I–1 General Industrial District, and that there was no de jure or de facto exclusion[4] of non-coal surface mining or quarrying, the manufacture of stone and stone-related products, concrete batch and manufacturing plants, bituminous asphalt plants and their attendant and accessory uses in Sugarloaf Township. (Board Conclusions of Law (COL) ¶¶ 5–11.)

■ The trial court, without taking additional evidence, reversed the decision of the Board, finding the Larocks' expert,

---

3. It appears that the trial court made "findings of fact" but, because it did not take de novo evidence, the Board was the finder of fact. See Section 754(a), (b) of the Local Agency Law, 2 Pa.C.S. § 754(a), (b).

4. A de facto exclusion is established where an ordinance permits a use on its face but, when applied, acts to prohibit the use throughout the municipality. Polay v. Board of Supervisors of West Vincent Township, 752 A.2d 434, 437 n. 7 (Pa.Cmwlth.2000), petition for allowance of appeal denied, 568 Pa. 673, 795 A.2d 982 (2000). Conversely, a de jure exclusion is one where a landowner alleges that the ordinance facially and totally excludes a proposed use. Id.

Ross, credible to the extent that he stated that only .5% of the area currently zoned for mining[5] could actually be mined and that this was not sufficient for mineral extraction. Specifically, the trial court stated that the Township's zoning ordinance is inconsistent with Section 603(i) of the MPC, 53 P.S. § 10603(i),[6] which requires zoning ordinances to provide for the reasonable development of minerals in each municipality and, thus, the court found the ordinance invalid. It opined that the ordinance "does not provide for the reasonable development of minerals in Sugarloaf Township, but merely pays lip service to this requirement by allowing for surface-mining, quarrying, and accessory uses, in a geographically limited area in which development and extraction ... [is] ... unreasonable [and] unfeasible." (Trial Ct. Op. at 11.) The court went on to state that:

Not only does this mean mining and similar mineral-based extractive industries must be permitted in every community, but by the plain and unambiguous words of the statute, "reasonable development" of minerals must be allowed. This is also consistent with prior Pennsylvania case law which mandates a zoning ordinance will be held unconstitutionally exclusionary if it does not make reasonable allowance for legitimate uses, or that the land use regulations of a municipality must meet the legitimate needs of all categories of people within

its boundaries. *Surrick v. Zoning Hearing Board of Township of Upper Providence*, [476 Pa. 182, 189,] 382 A.2d 105, 108 (1977).

(Trial Ct. Op. at 12.) The trial court concluded that the Township had zoned the development of minerals out of existence, in contravention of the MPC, by making it impossible to mine or quarry. It then provided *site specific relief* by granting the curative amendment *in toto*, permitting mining, and cement and asphalt plants in the Conservation District. Further, it retained jurisdiction over the curative amendment's "implementation" in order to protect the rights of the Larocks. The Township and certain residents separately appealed the trial court's order. The Township's appeal (No.1998 C.D.2003) was dismissed for failure to file a brief. The appeal by the residents-Appellants (No. 1997 C.D.2003) remains.[7]

■ Appellants first contend that the Board's decision to deny the curative amendment was supported by substantial evidence. Specifically, they argue that any exclusion of mining was partial and, therefore, this case does not concern a *de jure* exclusion. As far as a *de facto* exclusion is concerned, Appellants argue that under a "fair share analysis" as set forth by our Supreme Court in *Surrick*, the existing 4.5–8% of land allotted for the mining is adequate. The Larocks respond that the

---

5. Ross testified that 85% of the I–1 General Industrial District has already been mined out. The remaining land equates to roughly 85 acres. These 85 acres represent about 17% of the I–1 District. Ross testified that these 85 acres represent "about half of one percent" of the total area of the Township that has not been mined out in that District. According to Ross, it is only this percentage (.5%) that is currently available for extraction, if it is feasible. (Jan. 29, 2002 Hearing, N.T. at 37.)

6. Section 603 of the MPC states in pertinent part:

(i) Zoning ordinances shall provide for the reasonable development of minerals in each municipality.

7. "If the trial court has not taken additional evidence on the merits, we must review the Board's decision for abuse of discretion or error of law." *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136, 139 (Pa.Cmwlth.2004).

Township overlooked the proportionately small amount of land zoned for mining and what remained could not feasibly be mined from an engineering and economic standpoint. Therefore, the Larocks assert that the ordinance is exclusionary in effect.

Although the parties focus on a "fair share" analysis, this case involves the statutory construction of Section 603 of the MPC. The judicially created "fair share" doctrine, which was enunciated in *Surrick*, focused on the responsibilities of communities to provide a variety of *housing opportunities* so that people would not be excluded from living in a community because of their race, class or economic hardship. *See also* Mandara Meyers, Note *(Un)equal Protection for the Poor: Exclusionary Zoning and the Need for Stricter Scrutiny*, 6 U. Pa. J. Const. L. 349 (2003)(discussing exclusionary zoning and the discriminatory effects it has on people of a disadvantaged class and race.) In this case, however, the legal issue involves the statutory construction and application of Section 603 of the MPC to the Sugarloaf Township ordinance.

Section 603 states in pertinent part:

(a) Zoning ordinances should reflect the policy goals of the statement of community development objectives required in section 606 and give consideration to the character of the municipality, the needs of the citizens and the suitabilities and special nature of particular parts of the municipality.

(b) Zoning ordinances, except to the extent that those regulations of mineral extraction by local ordinances and enactments have heretofore been superseded and preempted by [other specifically cited statutes not at issue here] ... or that regulation of other activities are preempted by other Federal or State laws may permit, prohibit, regulate, restrict and determine:

(1) Uses of land, watercourses and other bodies of water.

* * * *

(5) Protection and preservation of natural and historic resources and prime agricultural land and activities.

(c) Zoning ordinances may contain:

(7) Provisions to promote and preserve prime agricultural land, environmentally sensitive areas and areas of historic significance,

* * * *

(g)(1) Zoning ordinances shall protect prime agricultural land and may promote the establishment of agricultural security areas.

(h) Zoning ordinances shall encourage the continuity, development and viability of agricultural operations. Zoning ordinances may not restrict agricultural operations or changes to or expansions of agricultural operations in geographic areas where agriculture has traditionally been present unless the agricultural operation will have a direct adverse effect on the public health and safety.

(i) *Zoning ordinances shall provide for the reasonable development of minerals in each municipality.*

(j) Zoning ordinances adopted by municipalities shall be generally consistent with the municipal or multimunicipal comprehensive plan or ... with the municipal statement of community development objectives and the county comprehensive plan. ...

* * * *

(l ) Zoning ordinances shall permit no-impact home-based businesses in all residential zones of the municipality as a use permitted by right, except that such permission shall not supersede any deed

restriction, covenant or agreement restricting the use of land nor any master deed, bylaw or other document applicable to a common interest ownership community.

53 P.S § 10603 (emphasis added). This statute, taken as a whole, weighs and balances several different interests in requiring zoning ordinances to reflect the policy goals of the community, and subsection (i) sets out the reasonable development of minerals as *one* such interest. However, the statute requires a *balancing of interests* to determine whether the zoning ordinance, which provides for mining in the I–1 General Industrial District and not in a Conservation District, is *reasonable*.

In determining what is "reasonable," the Board and trial court must consider the various factors delineated in Section 603, including, but *not limited to,* subsection (i). Section 603 acknowledges: the special nature of various sites within the municipality, 53 P.S. § 10603(a); the special protection and preservation allowed for natural resources and agricultural land, 53 P.S. § 10603(b)(5); that zoning ordinances may contain provisions to promote agriculture, 53 P.S. § 10603(c)(7); and, that ordinances adopted shall be consistent with the municipal comprehensive plan, 53 P.S. § 10603(j). Here, the community objectives in the Township's Zoning Ordinance, which are in accordance with the Township's Comprehensive Plan, include a provision to "encourage the preservation of natural amenities such as streams, stream valleys and wooded areas." (Township Zoning Ordinance § 27–102(2)E at 27–5.) [8]

The trial court did not consider any of the factors or balance the interests set out in Section 603, but rather focused *only* on the bare percentage of land that had not been already mined and was still available for mining in the Industrial District, found it to be negligible, and automatically granted site specific relief. This was error. For purposes of assessing whether the Township has complied with Section 603, the Board and trial court must consider whether, *as a whole,* the ordinance is reasonable—that it reflects the above-enumerated criteria. Because this was not done, we must remand this matter for further proceedings. [9]

Therefore, we vacate the trial court's order granting the curative amendment and remand with directions to the trial court to remand this case to the Board to evaluate the factors in Section 603 of the MPC consistent with the directive in this opinion.

### ORDER

NOW, January 26, 2005, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby vacated and this matter is remanded to the trial court with directions to remand this matter to the Sugarloaf Township Board of Supervisors to evaluate the request for a curative amendment consistent with the foregoing opinion.

Jurisdiction relinquished.

---

8. Another potential interest to be balanced here is the Environmental Amendment to the Pennsylvania Constitution of 1968, Article I, Section 27.

9. Because of our disposition, we do not decide what relief would be appropriate should the Board or the trial court determine that the Township's Ordinance does not comply with Section 603. We do note that, noticeably absent from the trial court's opinion, and from the Larocks' argument, is any discussion of the reasonableness of current zoning as it relates to concrete batch manufacturing plants, asphalt plants, scales and offices, which were included in the grant of site specific relief.