# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Doylestown II – : 
RT 313 TVC - ARC, : 
L.P. of the Decision of : 
the Plumstead Township : No. 455 C.D. 2019
Zoning Hearing Board : Argued: December 12, 2019
Dated October 27, 2017 : 
 : 
Appeal of: Plumstead Township : 
Board of Supervisors : 

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE P. KEVIN BROBSON, Judge[1]
HONORABLE MICHAEL H. WOJCIK, Judge[2]

*OPINION NOT REPORTED*

**MEMORANDUM OPINION[3]**
**BY JUDGE BROBSON**  **FILED: October 20, 2020**

The Plumstead Township (Township) Board of Supervisors (Appellant) appeals from the order of the Court of Common Pleas of Bucks County (common pleas), dated March 8, 2019. Common pleas sustained the appeal of Doylestown II - RT 313 TVC - ARC, L.P. (Owner) from the decision of the Township's Zoning Hearing Board (ZHB), dated October 27, 2017. The ZHB denied Owner's zoning application (Application) to construct a convenience store with fuel dispensing facilities in the Township's Neighborhood Commercial Zoning

---

[1] This opinion was reassigned to the authoring judge on February 20, 2020.

[2] Following oral argument, Judge Wojcik was assigned to participate in the disposition of this matter as a reading judge.

[3] This opinion is filed in accordance with Section 256(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.256(b).

District (C-1 District).  The sole issue before this Court is whether the Plumstead Township Zoning Ordinance (Ordinance) is unconstitutionally exclusionary.  For the following reasons, we will reverse common pleas' order.

## I. BACKGROUND

Owner is the equitable owner of two contiguous parcels of real property located at 3617 and 3633 Ferry Road in Fountainville, Bucks County, Pennsylvania (collectively, the Property).  The Property is located in the Township's C-1 District and consists of approximately 3.75 acres on the northwest corner of the intersection of Swamp Road and Ferry Road.  On October 28, 2016, Owner sent a letter to the Township's Zoning and Code Enforcement Officer (Zoning Officer), requesting a preliminary opinion pursuant to Section 916.2(1) of the Pennsylvania Municipalities Planning Code (MPC).[4]  Owner proposed to consolidate and develop the Property with a 4,736-square-foot Wawa convenience store, 10 fueling stations, and 58 parking spaces.[5]  (*See* Reproduced Record (R.R.) at 958a, 1013a-15a.)

Owner's letter invoked several relevant provisions of the Ordinance, beginning with the following definitions of principal uses:

> **G3 Retail Store.**  A shop or store selling commodities and goods to the ultimate consumer.
>
> . . . .
>
> B. Any retail store that provides for gasoline or fuel sales directly to retail customers shall be considered

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.2(1).  Section 916.2(1) of the MPC provides, in relevant part:  "The landowner may submit plans and other materials describing his proposed use or development to the zoning officer for a preliminary opinion as to their compliance with the applicable ordinances and maps."

[5] Owner originally proposed an additional 5,000-square-foot retail building and 83 parking spaces, but, on April 10, 2017, Owner submitted a revised plan eliminating the additional building and reducing the number of parking spaces.  (Appellant's Br. at 9; Owner's Br. at 3.)

2

to be a Use G22, Automobile Gasoline Station, *and shall meet the requirements of that use* and shall only be permitted in zoning districts where Use G22 is permitted.

. . . .

**G17 Convenience Store.**  A retail store offering primarily groceries, prepared food items, and other small consumer items intended for carry-out trade.  Where sale of gasoline or fuel is proposed, the use shall be located only in a [zoning] district where the Use G22[] Motor Vehicle Gasoline Station[] is permitted *and only where the requirements of Use G22 are met*.

. . . .

**G22 Motor Vehicle Gasoline Station.**  An establishment whose principal function is the sale of gasoline and fuels for automobiles. . . .  Any use which provides for gasoline or fuel sales directly to retail customers shall be considered to be an automobile gasoline station *and shall meet the requirements of this use* and shall only be permitted in the zoning districts where this use is permitted. . . .

. . . .

J.  A service station may contain only two of the following four types of activities:  . . . convenience commercial, which is sale of convenience[] food and beverage items . . . .  *Convenience commercial shall be limited to 2,000 square feet of floor area.*

(Sections 27-304.53, .67, and .72 of the Ordinance, respectively (emphasis added);

Reproduced Record Supplement (R.R.S.) at 1327a-28a, 1332a, 1334a-35a.)

The Ordinance defines the accessory use on which Owner relied as follows:

**I1 Nonresidential Accessory Building.**  Accessory building, structure, or use customarily incidental and subordinate to a use permitted within the zoning district, except outside storage and drive through facilities.

(Section 27-304.96 of the Ordinance; R.R.S. at 1362a.)

3

Section 27-1302.1 of the Ordinance permits a G3 Retail Store and an I1 Nonresidential Accessory Building by right within the C-1 District, where the Property is located. (R.R.S. at 1393a.) G17 Convenience Stores and G22 Motor Vehicle Gasoline Stations, however, are *not* permitted by right in the C-1 District but are allowed by right elsewhere (in the Township's C-2 Commercial District (C-2 District)). (Sections 27-1302.1 and 27-1402.1 of the Ordinance; R.R.S. at 1392a-94a.)

Owner specifically asked the Zoning Officer: (1) whether a G3 Retail Store (permitted by right in the C-1 District) could operate in conjunction with fuel sale facilities constituting an I1 Nonresidential Accessory Building; and (2) whether a G3 Retail Store with such I1 accessory facilities would be subject to the Use G22 criteria. (*See* R.R. at 1014a.) On December 1, 2016, the Zoning Officer issued his preliminary opinion that Sections 27-304.53.B and 27-304.67 of the Ordinance require that a G3 Retail Store or G17 Convenience Store offering gasoline sales shall be considered a G22 Motor Vehicle Gasoline Station under Section 27-304.72 of the Ordinance, must meet the requirements of the G22 use, and may be approved only within zoning districts in which the G22 use is permitted. (*Id.* at 1017a.) The Zoning Officer also stated that, because gasoline sales directly to retail customers constitute a principal use, the proposed fuel facilities cannot be considered an I1 Nonresidential Accessory Building under Section 27-304.96 of the Ordinance. (*Id.* at 1017a-18a.) Accordingly, he concluded that a G3 Retail Store with fuel sales is subject to the G22 Motor Vehicle Gasoline Station criteria. (*Id.* at 1018a.)

On December 20, 2016, Owner filed the Application with the ZHB. In the Application, Owner: (1) appealed from the Zoning Officer's preliminary opinion, requesting approval for a retail store with accessory fuel facilities in the C-1 District

4

that would *not* be subject to the G22 criteria or, in the alternative, raising a validity challenge to the *de facto* exclusion of that business from the Township, or, as a second alternative, seeking variance relief from related Ordinance provisions; (2) requested an interpretation of the Ordinance's prior nonconforming use provisions or, in the alternative, related variance relief; and (3) sought authorization of two principal uses on the Property with variance relief from Ordinance provisions concerning lot area, setback, buffer, and off-street parking. (*See id.* at 949a-1018a.)

The ZHB conducted hearings on eight different dates between March 1 and August 30, 2017. The testimony relevant to the issue on appeal—whether the Ordinance is unconstitutionally exclusionary—consists of the testimony of two expert witnesses, with one called by each of the parties. At the ZHB hearing held March 1, 2017, Owner presented the testimony of Charles Schmehl, a zoning and land planning researcher and vice president of Urban Research & Development Corp. (*Id.* at 276a.) Mr. Schmehl testified based upon his own experience, his review of the Ordinance and a National Association of Convenience Stores publication entitled *How Convenience Stores Work and Their Contributions to Communities*, and his research regarding new convenience stores built outside of urban areas in eastern Pennsylvania between 2012 and 2017. He stated that, although convenience stores are responsible for 80% of nationwide gas sales, retail goods reliably outsell gasoline at convenience stores and "the vast majority of customers . . . do not buy gas." *(Id.* at 300a; *see id.* at 295a, 329a-30a.) Mr. Schmehl opined, therefore, that the sale of gasoline is customarily incidental and subordinate to a retail store use and should be permitted under the Ordinance as an I1 Nonresidential Accessory Building, rather than as a G22 Motor Vehicle

5

Gasoline Station. (*See id.* at 299a-300a, 307a, 309a, 335a-36a.) He acknowledged the Zoning Officer's interpretation of the Ordinance but claimed that the provisions were vague and that there is "an alternate way of interpreting the [O]rdinance that is reasonable." (*Id.* at 303a.)

Mr. Schmehl acknowledged that the MPC authorizes municipalities to regulate size, location and intensity of uses, but expressed his opinion that "as market conditions change, as the development within a municipality changes, [the municipality has] an obligation to update its ordinances periodically." (*Id.* at 302a.) He added:

> [Zoning ordinances] are not directly driven by [i]ndustry standards, but [municipalities] need to recognize market trends and they need to not create a situation where there is a *de facto* exclusion where the limitations are so arbitrary and so strict that it is very difficult for anyone to comply with them.

(*Id.* at 314a.)

Specifically addressing the 2,000-square-foot limitation on G3 Retail Stores selling fuel, Mr. Schmehl opined that the limitation—applicable since 1991—is outdated and arbitrary. (*See id.* at 299a, 304a, 330a.) He observed that retail stores with fuel sales are "very common today" and that the size of suburban convenience stores constructed during the last several years ranges from 4,000 to 8,000 square feet of retail area, averaging 4,938 square feet, which is one and one-half times larger than the largest retail store with fuel sales that the Ordinance permits. (*Id.* at 304a; *see id.* at 294a, 298a, 328a-29a.) Mr. Schmehl specifically stated:

> Q. Based upon the research that you have done[,] is 2[,]000 square feet a reasonable limitation on the size of a retail store that can sell motor vehicle fuel?

6

A. It is not, and . . . no one is building it. It is not a viable economic model to have a 2[,]000[-]square[-]foot retail store with gasoline sales in a new business.

(*Id.* at 308a-09a.)

On cross-examination, Mr. Schmehl claimed his research did not reveal any new retail stores with fuel sales outside an urban area that had less than 4,000 square feet of retail space. (*Id.* at 311a.) He declared: "[A]ll of the chains that have stores between 2,000 and 3,000 [square] feet are closing them or expanding them. . . . I think that shows a clear market trend." (*Id.* at 312a.) Specifically, however, he stated:

Q. Your testimony is not that a 2,000[-]square[-]foot retail store with a gas fueling facility isn't viable[,] is it?

A. It is very uncommon for that to be built today.

. . . .

Q. But plenty of them exist today and thrive?

A. They are shrinking in number.

(*Id.* at 329a.) When asked specifically whether it is "impossible" to develop a retail store of less than 2,000 square feet with fuel sales in the C-2 District (where such a use is permitted by right), Mr. Schmehl responded that it was "theoretically possible." (*Id.* at 321a-22a.)

At the ZHB hearing on August 30, 2017, Appellant presented the testimony of Roshanee Bindra, whom the ZHB accepted as an expert in buying, selling, and marketing convenience stores with gas stations. (*Id.* at 780a.) Ms. Bindra owns five independent convenience stores (two in Berks County, Pennsylvania, and three in Missouri) and provides consulting services to similar convenience store retailers to turn around and grow their businesses. (*See id.* at 768a-71a, 779a.) She testified that her store in Reading, Pennsylvania, is 1,800 square feet with 2 fuel pumps; her

7

Franklin, Pennsylvania, store is 2,600 square feet with 6 fuel pumps; and her other stores range in size from 1,000 to 2,600 square feet of retail area and also include fuel stations. (*Id.* at 772a, 775a, 778a, 781a.) She represented that most of her clients own 2,000 square feet or less of retail space and emphasized that those businesses appreciate significantly in value and earn profits. (*Id.* at 781a-82a, 792a-93a, 803a.)

Ms. Bindra stated that 75% of customers purchase retail items and do not buy gasoline. (*Id.* at 777a-78a, 787a.) On cross-examination, Ms. Bindra explained that a convenience store with fuel sales profits primarily from the retail store sales (which are "in the dollars") and not from gasoline sales (which are "in the pennies"). (*Id.* at 796a.). Most significantly, Ms. Bindra testified that, based on her experience and that of her clients, retail stores of up to 2,000 square feet with gasoline sales are economically viable and profitable. (*Id.* at 780a-83a, 792a-93a.)

The ZHB denied the Application on September 20, 2017. In its written decision, the ZHB thoroughly summarized the testimony of, *inter alia*, Mr. Schmehl and Ms. Bindra and then made the following findings of fact and credibility determinations:

> The [ZHB] acknowledges national industry and marketing trends of convenience stores covering in excess of 4,000 square feet with fuel sales. The [ZHB] rejects[,] however, Mr. Schmehl's testimony that this trend represents the only economically viable model for convenience stores. The [ZHB] finds the testimony of [Ms.] Bindra as credible, including, but not limited to, her opinion that small convenience stores of approximately 2,000 square feet with gasoline sales represent a viable economic model.

(ZHB Decision at 5.) Based on those findings, the ZHB concluded:

> In the instant record, the Ordinance permits convenience stores not exceeding 2,000 square feet with gasoline sales in the C[-]2 . . . District. This [ZHB] finds and concludes such an option is economically feasible,

8

although this option does not fit the modern trend nor is this option preferred by [Owner]. The [ZHB] finds the testimony of business consultant and owner Ms. Bindra as credible in establishing that small convenience stores of 2,000 square feet (or even slightly less) with gasoline sales are economically viable and profitable enterprises. Ms. Bindra credibly testified that the [Wawa] model for convenience stores was not the only approach in today's business world in operating convenience stores. The [ZHB] rejects the testimony of [Owner's] witnesses, in particular Mr. Schmehl, on this point.

. . . .

. . . . [The size and location restrictions on retail stores with fuel sales] are permissible regulations pursuant to Section 603 of the [MPC]. The regulations may not fit [Owner's] business model and profit goals or even reflect the trend in convenience stores nationwide; however[,] such a failure does not represent a *de facto* exclusion. [Owner] failed to meet its burden to overcome the presumption of constitutionality of the Ordinance.

(ZHB Decision at 9-10 (citations omitted).)

On November 22, 2017, Owner appealed to common pleas, which sustained Owner's validity challenge to the Ordinance. On March 8, 2019, common pleas issued its final order stating that "[Owner] is entitled to site-specific relief permitting it to develop a convenience store with gasoline dispensing facilities . . . on the Property . . . in accordance with the plans submitted to the [ZHB] in this matter." (Common pleas' order at 2.) On April 15, 2019, Appellant appealed to this Court.

## II. ISSUES

On appeal,[6] Appellant argues that common pleas erred or abused its discretion in concluding that the Ordinance is unconstitutionally exclusionary.

---

[6] Where common pleas did not take additional evidence, our scope of review is limited to determining whether the ZHB committed an error of law or a manifest abuse of discretion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board **(Footnote continued on next page…)**

In support of that general contention, Appellant raises three issues for our consideration: (1) whether common pleas erred in concluding that the Ordinance is *de jure* exclusionary, (2) whether the ZHB erred or abused its discretion in concluding that the Ordinance is not *de facto* exclusionary, and (3) whether the catch-all provision in Section 27-304.102 of the Ordinance[7] cures any exclusionary effect of its other provisions.

### III. DISCUSSION

"The issue of whether a zoning ordinance is exclusionary is a question of law, reviewable by this court." *Atiyeh v. Bd. of Comm'rs of Twp. of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012). Generally, in reviewing the constitutionality of a zoning ordinance, we employ a substantive due process inquiry, seeking to balance a landowner's rights against the public interest sought to be protected by an exercise of police power. *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). Moreover, "[b]ecause a zoning ordinance is presumed valid, a challenger bears a heavy burden of establishing its invalidity." *Protect PT v. Penn Twp. Zoning Hearing Bd.*, 220 A.3d 1174, 1183 (Pa.

---

abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

[7] Section 27-304.102 of the Ordinance provides:

> **Lawful Use Not Otherwise Permitted.** It is the intent of this Chapter to include all legitimate land uses. Any lawful use that is required to be permitted by the [MPC] and is not otherwise permitted in other use categories of this Chapter may be permitted as a conditional use; provided that the applicant for the conditional use establishes that the proposed use meets the following criteria as well as the requirement [sic] set forth in all other applicable sections of this Part.

(R.R.S. at 1366a.)

10

Cmwlth. 2019), *appeal denied*, 233 A.3d 677 (Pa. 2020); *accord Twp. of Exeter*, 962 A.2d at 660.

Regarding exclusionary zoning ordinances in particular, our Supreme Court has repeatedly held that "the constitutionality of zoning ordinances which totally prohibit legitimate businesses . . . from an entire community should be regarded with particular circumspection." *Twp. of Exeter*, 962 A.2d at 659-60 (quoting *Exton Quarries, Inc. v. Zoning Bd. of Adjustment of W. Whiteland Twp.*, 228 A.2d 169, 179 (Pa. 1967)). Our analysis of an exclusionary zoning challenge proceeds in two steps, as follows:

> [W]e first consider whether the challenging party has overcome the presumed constitutionality of [the] ordinance by showing it excludes [the proposed] use. If we determine the challenger has done so, we then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare.

*Id.* at 661.

Our courts have recognized two distinct ways in which a zoning ordinance can unconstitutionally exclude a legitimate use. "In a *de jure* exclusion case, the challenger alleges that an ordinance on its face totally excludes a use." *Id.* at 659. This differs from a *de facto* exclusion case, where "the challenger alleges that an ordinance appears to permit a use, but under such conditions that the use cannot in fact be accomplished." *Id.* Thus, whether the challenger has mounted a *de jure* or a *de facto* exclusionary challenge depends on how the proposed use is "set forth in [the challenger's a]pplication to the [zoning b]oard" and whether the challenger alleges that the particular use is facially excluded. *Ctr. Lime & Stone Co. v. Spring*

11

*Twp. Bd. of Supervisors*, 787 A.2d 1105, 1111 (Pa. Cmwlth. 2001), *appeal denied*, 798 A.2d 1291 (Pa. 2002).

## A. *De Jure* Exclusion

Appellant first contends that common pleas erred in concluding that the Ordinance effects a *de jure* exclusion of Owner's proposed use. In so arguing, Appellant recognizes that common pleas did not expressly state whether it found a *de jure* exclusion. (Appellant's Br. at 15.) Nevertheless, Appellant relies on common pleas' statement that "the proposed use is a legitimate business which cannot be completely excluded" to infer that common pleas found a *de jure* exclusion. (*Id.* (quoting common pleas' order at 2 n.1).) Appellant then argues that, because Owner did not make a *de jure* exclusionary challenge before the ZHB, common pleas erred in raising and applying, *sua sponte*, a novel legal basis for Owner's challenge.

In response, Owner concedes that common pleas did not expressly discuss *de jure* exclusion. (Owner's Br. at 25.) Indeed, Owner points out that common pleas expressly referred only to a *de facto* exclusion in its opinion and claims that common pleas meant to address only that type of exclusion—a view "in line with the arguments made by [Owner] before the ZHB, [common pleas], and [on appeal]." (*Id.*) Owner then argues in the alternative, however, that common pleas *could* permissibly have found a *de jure* exclusion. Then, despite its earlier statement that it argued a *de facto* exclusion before the ZHB, Owner suggests that a *de jure* exclusion "was [its] argument from the beginning." (*Id.* at 29.)

In our view, both parties have read too much into common pleas' decision and the record on which it was based. Although common pleas could have been clearer about whether it was addressing a *de jure* or a *de facto* exclusion claim, it is clear

12

that Owner's challenge to the Ordinance was a *de facto* exclusion challenge from the beginning. In the Application, Owner repeatedly characterized the proposed use as a "retail store[] with [accessory] fuel dispensing facilities." (*Id.* at 955a, 959a, 961a-62a.) Owner conceded throughout the Application that its validity challenge was based on a *de facto* exclusion of that use. (*Id.*) Specifically, Owner stated that "[t]he [Ordinance's] 2,000[-]square[-]foot limitation on the size of retail stores that include fuel sales *is a de facto exclusion* of retail stores with fuel dispensing facilities." (*Id.* at 962a (emphasis added).) In other words, the square footage component Owner challenges is not part of the definition of the proposed use but is a restriction on that use which, Owner alleges, effects a *de facto* exclusion. Moreover, the ZHB clearly analyzed a claim for "a *de facto* exclusion," not a *de jure* exclusion. (ZHB Decision at 10.)

Nothing in common pleas' opinion is inconsistent with this view, the parties' speculation to the contrary notwithstanding. As the parties admit, nowhere did common pleas indicate that it was analyzing a *de jure* exclusion claim. Had it done so, we might apply a different analysis, emphasizing that common pleas should address only the particular type of claim set forth by Owner before the ZHB. *See Ctr. Lime & Stone Co.*, 787 A.2d at 1111. But given common pleas' language and the record below, we construe common pleas' decision as not addressing a *de jure* exclusion, and we will not disturb the decision on that basis.

### B. *De Facto* Exclusion

Appellant next contends that the ZHB did not err or abuse its discretion in concluding that the Ordinance is not *de facto* exclusionary. In support, Appellant argues that Owner's proposed use—a retail store with fuel sales—is clearly permitted under the Ordinance within the C-2 District and that the 2,000-square-foot

13

limitation on the retail store does not make that use economically infeasible. Appellant cites several decisions of Pennsylvania courts to support the notion that the Township need not zone for *large* retail stores with fuel sales as a distinct land use. Additionally, Appellant emphasizes that it provided evidence—which the ZHB expressly credited—to show that, despite Owner's assertion of an "industry standard" for larger retail stores, a retail store of less than 2,000 square feet is a commercially viable use in the Township. Appellant argues that the ZHB rejected Owner's evidence to the contrary and properly relied upon evidence of record to conclude that the 2,000-square-foot limitation does not effectively exclude the proposed use from the Township. Accordingly, Appellant insists, common pleas erred in reversing the ZHB's decision.

In response, Owner insists that the testimony before the ZHB actually undermines the ZHB's conclusion and shows that the Ordinance effectively excludes all retail stores with fuel sales from the Township. Specifically, Owner suggests that it provided testimony that a retail store smaller than 2,000 square feet is not viable, and that Ms. Bindra's testimony somehow did not refute that proposition. Owner acknowledges that the ZHB credited Ms. Bindra's testimony, but Owner does not discuss her direct statement that a retail store smaller than 2,000 square feet with fuel sales is economically viable. Owner also argues that Appellant did not show how the restrictions in the Ordinance are related to a legitimate exercise of the police power.

Analysis of a *de facto* exclusion claim focuses on whether the zoning ordinance practically (as opposed to expressly) prevents the proposed use throughout the municipality. Often, such challenges focus on size restrictions imposed on facially permissible uses. *See, e.g., Twp. of Exeter*, 962 A.2d at 660 (holding sign

14

size limit of 25 square feet is *de facto* exclusion of billboards); *H.R. Miller Co. v. Bd. of Supervisors of Lancaster Twp.*, 605 A.2d 321, 325 (Pa. 1992) (holding setback requirements for facially permitted quarry are *de facto* exclusion); *Derry Borough v. Shomo*, 289 A.2d 513, 514 (Pa. Cmwlth. 1972) (en banc) (holding zoning ordinance *de facto* exclusionary where mobile home of sufficient minimum size to meet zoning ordinance not legally transportable on public roads). "If an ordinance, through its particular requirements, makes the development of a use permitted by the ordinance economically *impossible*, the ordinance is unconstitutional, because the municipality has essentially precluded a legitimate use by an indirect means." *Stahl v. Upper Southampton Twp. Zoning Hearing Bd.*, 606 A.2d 960, 967 (Pa. Cmwlth. 1992) (emphasis added), *appeal denied*, 621 A.2d 584 (Pa. 1993).

We have distinguished true economic impossibility, which effectively excludes a use, from regulations creating "inability to glean optimal financial gain," or economic loss, which are not exclusionary. *Interstate Outdoor Advert., L.P. v. Zoning Hearing Bd. of Warrington Twp.*, 39 A.3d 1019, 1027 (Pa. Cmwlth. 2012), *appeal denied*, 75 A.3d 1283 (Pa. 2013). Thus, "[t]he economic *profitability* of a use . . . is irrelevant to our analysis of the constitutionality of an ordinance." *Smith v. Hanover Zoning Hearing Bd.*, 78 A.3d 1212, 1219 (Pa. Cmwlth. 2013) (emphasis added), *appeal denied*, 89 A.3d 1286 (Pa. 2014). "The critical question is not whether one use is more profitable, but rather whether the [proposed] use is so unprofitable in its permitted zone as to be effectively excluded." *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 290 (Pa. Cmwlth. 2000), *appeal denied*, 771 A.2d 1291 (Pa. 2001).

Here, as in other cases, "there was extensive, conflicting testimony as to whether [the proposed use] would be economically feasible with [the applicable]

restriction." *Tri-Cty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 519 (Pa. Cmwlth.), *appeal denied*, 101 A.3d 788 (Pa. 2014). On such a record, it is the purview of the ZHB—not common pleas and not this Court—to give credit and weight to the evidence in the sound exercise of its discretion. *Id.* at 518. As always, if "the record supports the ZHB's determinations," we will "discern no error in the ZHB's conclusion that [Owner] did not meet its burden of showing the [Ordinance's] . . . limitation effectively excludes [the proposed] use." *Id.* at 519.

We agree with Appellant that the record contains substantial evidence to support the ZHB's determination. Specifically, Ms. Bindra testified that she and her clients profitably operate retail stores of less than 2,000 square feet that also sell fuel. The ZHB accepted her testimony as credible in its entirety and concluded that the 2,000-square-foot limitation does not effectively exclude retail stores with fuel sales because a store of that size can profitably operate. Owner does not explain why it apparently believes that Ms. Bindra's testimony is insufficient to support the ZHB's findings. It is true that Owner presented testimony to the contrary, but the ZHB expressly declined to credit that testimony. Had the ZHB made different credibility determinations, we might have reached a different result. *Compare Twp. of Exeter*, 962 A.2d at 662 (holding substantial evidence supported zoning board's conclusion of *de facto* exclusion) *with Interstate Outdoor Advert.*, 39 A.3d at 1025 (holding substantial evidence supported zoning board's conclusion of *no* exclusion, and noting the "different factual findings" in *Township of Exeter*). Here, because the ZHB's decision is supported by substantial evidence, it did not abuse its discretion.

16

## IV. CONCLUSION

For the foregoing reasons, we conclude that the ZHB did not err or abuse its discretion in rejecting Owner's validity challenge to the Ordinance. Accordingly, we will reverse the order of common pleas.[8]

P. KEVIN BROBSON, Judge

Judge Covey did not participate in the decision of this case.

---

[8] Given this result, we need not address Appellant's remaining arguments on appeal.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In Re: Doylestown II –                        :
RT 313 TVC - ARC,                             :
L.P. of the Decision of                       :
the Plumstead Township                        :    No. 455 C.D. 2019
Zoning Hearing Board                          :
Dated October 27, 2017                        :
                                              :
Appeal of: Plumstead Township                 :
Board of Supervisors                          :

# **O R D E R**

AND NOW, this 20th day of October, 2020, the order of the Court of Common Pleas of Bucks County, dated March 8, 2019, is REVERSED.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Doylestown II –                :
RT 313 TVC - ARC,                     :
L.P. of the Decision of               :
the Plumstead Township                :        No. 455 C.D. 2019
Zoning Hearing Board                  :        Argued: December 12, 2019
Dated October 27, 2017                :
                                      :
Appeal of: Plumstead Township         :
Board of Supervisors                  :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                      FILED: October 20, 2020

The Plumstead Township Zoning Ordinance authorizes retail stores, convenience stores and gasoline service stations, each as separate permitted uses. However, it does not allow a retail store or a convenience store to sell gasoline as an accessory use anywhere in Plumstead Township. The Bucks County Court of Common Pleas (trial court) concluded, as a matter of law, that the Zoning Ordinance impermissibly excluded a legitimate business use from the Township, and I agree. Accordingly, with respect, I dissent.

Doylestown II-RT 313 TVC-ARC, L.P. (Landowner) proposes to build a Wawa convenience store that is 4,700 square feet in size with five fuel-dispensing facilities (10 pumping stations) covered by a canopy. The Zoning Ordinance makes this proposed use a "motor vehicle gasoline station" or "service station," which cannot have a retail space larger than 2,000 square feet. PLUMSTEAD TOWNSHIP ZONING ORDINANCE of 1991 (as amended in 2001) (ZONING ORDINANCE), §27-

304.72(J). By contrast, a "convenience store," a G17 use, and a "retail store," a G3 use, may be built up to 10,000 square feet. ZONING ORDINANCE §§27-304.53, 27-304.67. However, neither a convenience store nor a retail store is allowed to sell gasoline as an accessory use. ZONING ORDINANCE §27-304.67. The sale of gasoline must be the "principal function" of a "retail store that provides for gasoline or fuel sales," which is the definition of a "Motor Vehicle Gasoline Station." ZONING ORDINANCE §27-304.67.

Pennsylvania law requires a municipality to authorize all legitimate non-residential land uses somewhere within its boundaries. *Beaver Gasoline Company v. Zoning Hearing Board of Borough of Osborne*, 285 A.2d 501, 503-04 (Pa. 1971). Here, the record includes a report from the National Association of Convenience Stores that "[c]onvenience stores sell about 80% of the fuel purchased in the United States[.]" Reproduced Record at 1086a. Indeed, the Zoning Hearing Board (Zoning Board) acknowledged the "national industry and marketing trends of convenience stores covering in excess of 4,000 square feet *with fuel sales*." Zoning Board Decision at 5 (emphasis added). The evidence before the Zoning Board also established that sales in a Wawa retail store far exceed those at the fuel pump.

The Township acknowledges that it must provide for all legitimate business uses, but it argues that "it is not required to zone for every business model[.]" *Montgomery Crossing Associates v. Township of Lower Gwynedd*, 758 A.2d 285, 289 (Pa. Cmwlth. 2000). Roshanee Bindra testified for the Township. She owns retail establishments that would constitute "motor vehicle gasoline stations" under the Zoning Ordinance. She testified that a gasoline service station with a retail store of approximately 2,000 square feet is economically feasible, and the Zoning Board so found. The majority concludes that the trial court invaded the

MHL- 2

Zoning Board's fact finding function by not giving enough weight to this finding. To the contrary, the trial court fully accepted this finding and expressly acknowledged that a gas station "may be economically feasible even if the retail facilities are limited to no more than 2,000 square feet." Trial Court PA. R.A.P. 1925(a) op. at 5. However, the trial court concluded that this fact was irrelevant because a "Mini-Mart is not a Wawa, much less a Home Depot, Walmart or B.J.'s Club." *Id.*

Here, it is not the size limit imposed upon the retail portion of a motor vehicle gasoline station that is the problem. Rather, it is the prohibition imposed upon a "convenience store" or a "retail store" from selling gasoline at all. The Zoning Ordinance requires the sale of gasoline to be done exclusively by "an establishment whose *principal* function is the sale of gasoline and fuels for automobiles." ZONING ORDINANCE §27-304.72 (emphasis added).

An ordinance is *de facto* exclusionary if it may appear to permit a legitimate use but employs regulation to exclude that use. *LaRock v. Board of Supervisors of Sugarloaf Township*, 866 A.2d 1208 (Pa. Cmwlth. 2005); *Stahl v. Upper Southampton Township Zoning Hearing Board*, 606 A.2d 960 (Pa. Cmwlth. 1992) (ordinance was exclusionary because it allowed only three mobile homes per acre combined with a requirement of single ownership for the entire mobile home park). Here, a retail store is forbidden to sell gasoline except as its principal function, *i.e.*, as a "Motor Vehicle Gasoline Station." ZONING ORDINANCE §27-304.67. Where a legitimate use is excluded by a regulation, the exclusionary regulation must bear a substantial relationship to the public health, safety and general welfare. *Beaver Gasoline Company,* 285 A.2d at 503. As the trial court observed, the Township presented no evidence or explanation of how the prohibition against a

convenience or retail store having fuel dispensing facilities, anywhere in the Township, serves the public health, safety and general welfare.

The Township argues that Landowner simply proposes a different business model for a permissible Motor Vehicle Gasoline Station. By this logic, a zoning ordinance that authorizes a hotel use does not have to provide for motels, bed and breakfasts or tourist homes, which are just different "business models" of a hotel. In reality, each is a different business use even though each relate to the single business of providing overnight accommodations to paying guests. The Township's argument is ironic given that the Zoning Ordinance treats "retail stores" and "convenience stores" as separate uses even though each is a business model variation of the other.

The Zoning Board acknowledged that a retail or convenience store that sells gasoline is the trend in today's economy. There is no question that this use is a legitimate business, and there is no question that it is not permitted anywhere in the Township. In holding the Zoning Ordinance to be exclusionary, the trial court engaged in a legal exercise, applying the principles established by our Supreme Court in *Beaver Gasoline Company*, 285 A.2d 501, to the Zoning Ordinance in question. I would affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge